This was a writ of supersedeas to a judgment of the District Court of Morgantown.
Several points were made by the counsel on both sides : but the Judges, in delivering their opinions, having noticed one only, the state of the case and arguments of counsel will be confined to an elucidation of that point, viz : how far the wife is a competent witness in a case in which her husband may eventually be, but is not immediately, interested.
Sundry articles of personal property having been lent by Baring to the wife of 'Richard Claiborne, (which loan was proved by letters from Baring and his wife, who was Mrs. Claiborne’s sister,) and Richard Claiborne being in possession ; he made, on the 17th of December 1799, an absolute bill of sale to Reeder; comprising in it, not only the greater part of those articles, but several others to which Baring had no claim. This bill of sale was recorded in the County Court of Monongalia, on the 14th of August, 1800 ; but Claiborne still retained possession of the property.
Baring, having'understood that Reeder, by virtue of the bill of sale, intended to take away from Claiborne the articles mentioned therein, on the 19th of August, 1800, took into his own possession those which belonged to him. An action of trover was thereupon brought against him by Reeder. On the trial of the cause, he offered to prove by the deposition of Mrs. Claiborne, (which had been taken by consent, reserving the right of the plaintiff to except to her competency,) that several of the articles mentioned in the bill of sale and declaration were lent to her by Baring; that she had informed Reeder of this circumstance, and had shewn him, before he took the bill of sale, one of the letters which were evidence of the loan ; and that many of the articles for which the suit had been brought, being not the property of Baring, had never been claimed by him, nor taken into his possession : — to the reading of which deposition the plaintiff by his counsel objected, because “the said Anne Claiborne was interested, and an incompetent witness —which objection being sustained by the Court, Baring filed a bill of exceptions. The Jury found a verdict in favour of Reeder for $1148, 34, damages. A motion for a new trial, on several grounds, stated in the record, (but unnecessary to be mentioned here,) having been made, the plaintiff in open Court released all the damages, except $950; whereupon the motion was overruled, and judgment entered for the plaintiff.
*Wickham, for the plaintiff in error, contended that the deposition of Mrs. Claiborne had been improperly rejected by the District Court. Even her husband would have been a competent witness, because he was liable to Baring and Reeder equally, and the verdict in this case would not have been conclusive against him. (a) The rule, that no person shall be received to invalidate an instrument given or attested by himself applies only to negotiable instruments.(b) Claiborne might therefore be permitted to prove that although he had executed the bill of sale to Reeder, it included the property of Baring. If the objection be personal to-Claiborne on the ground that such conduct was destructive to his credit, the same objection would not apply to his wife. The doctrine that the wife shall not be permitted to accuse the husband of a crime, is to be understood in a technical, not a moral sense.
An interest in a witness to exclude him from giving testimony, must be direct and certain, not in expectation merely.(c) In this case, Claiborne and wife had not such-an interest as was known to the law, but depended upon the benevolence of Baring. If Claiborne had objected to answer interrogatories because he would thereby subject himself to an action ; still his wife might have been received as a witness : and her declarations could not be given in evidence to charge her husband.(d) Although the wife cannot give evidence tending to criminate her husband, yet between third persons, she may be called to prove facts which may eventually charge him.(e)
Attorney-General and Randolph, for the defendant in error, insisted that Mrs. Claiborne was not a competent witness. The law, which prevents husband or wife from being witnesses for or against each other is founded on general principles" and is intended to avoid that discord in families, which would inevitably ensue from a contrary rule.(f) In this case Mrs. Claiborne was introduced to prove facts which would shew that her husband was guilty of a fraud ; and, moreover, such as might produce a verdict which would be the ground of an action against him.
Suppose a writ of fieri facias had been levied on the goods, would she, in an action against the sheriff, be a competent witness to prove the right of property ? The case of Williams v. Johnson(g) was a mere nisi prius decision, and not settled on any correct principles ; nor has it any application to the present question ; because the verdict in that case could not have been given in evidence against the husband. *In Davis v. Dinwoody(h) the above case seems to have been overruled ; and in Cases temp. Hard. 264 ;(i) 2 Eq. Ca. Abr. 215, the true ground of objection to the husband’s or wife’s giving evidence for or against each other, is stated to be, that the peace of families might otherwise be destroyed. — This reason operates as strongly where the interest is eventual, as where the husband is a party. The above principle is also recognized in the case *81 of the King v. Cliviger,(a) in which it was said, that the wife could not be permitted to give evidence even tending in any degree to criminate her husband.
Wickham in reply. All the objections to the admissibility of Mrs. Claiborne’s testimony go to her credibility and not to her competency. In howe v. Jolliffe(b) a witness to a will was admitted to prove the insanity of the testator, although his subscribing his name as a witness under such circumstances went much to his credit. Eockart v. Graham (c) is a very strong case to shew that the witness must have a certain interest. These, with the cases before cited, he considered as conclusive. The case of Williams v. Johnson is objected to, because it was a decision at nisi prius : but it must be recollected that all questions on evidence arise there. It is, however, cited as authority in all modern publications of merit.(d) But it is asked, suppose a writ of fieri facias had been levied on the goods, would Mrs. Claiborne have been a competent witness to prove the right of property? The answer is, that she certainly would. Why should she not? The effect would be more immediate in that case ; and consequently there is less weight in the objection to her competency in the present; but no reason can be given for her exclusion in either case.
The case of Barker v. Dixie, cited from Cases temp. Hardw. 264, does not apply: there the husband was a party. The decision of the Court, in the King v. Cliviger(e) was right upon the main question; but some loose dicta of the Judges have been quoted, which were not warranted by the case before them : and even the authority of that case has since been doubted.(f) The husband was properly rejected as a witness, in the case of Davis v. Dinwoody(g) because the suit, though in the name of the wife’s trustees, was, in effect, for her benefit. Claiborne not being a party, in the case before the Court, his wife was surely a competent witness, and ought to have been received to prove the facts for which her testimony wa.s offered.
Cur. adv. vult.
^Wednesday, Nov. 19. The Judges delivered their opinions.
JUDGE TUCKER.
The only question which appears to me to deserve a moment’s consideration in this case is, whether the Court erred in rejecting the testimony of Mrs. Claiborne as an incompetent witness.
Had the question been made as to examining her viva voce before the nature and amount of her testimony could be known, I should have felt some difficulty ; from which I feel myself relieved by seeing the sum and substance of what she deposes. It is impossible to read it without feeling, that, although as a married woman she could not be said to have a legal interest in the goods in controversy, yet she derived such a benefit from the possession and use of them as might be deemed equal to any benefit she could have had of them, as the goods of her husband. The object of her testimony was to continue and retain that benefit to herself. The whole tenor of her testimony goes to prove that the defendant asserted a claim to the goods, purely for her benefit; for he never claimed or thought of claiming them till they were to be taken from her, and her evidence is to prevent their being taken from herself. Where the temptation to perjury is manifestly great, if the witness be sworn ; or if the circumstances of the case be such that although the witness should be. sworn she cannot be entitled to credit, ought a Court to admit the witness to be sworn? Upon what other ground is it that the incompetency of parties, and of husband and wife in cases affecting each other is founded? “It has always been held a sacred and inviolable rule of evidence, in all cases whatsoever, not to admit the testimony of a witness who is either to be a gainer or loser by the event of the cause, whether such advantage be direct and immediate or consequential only.”(h) Though Mrs. Claiborne could not in a technical sense be legally a gainer or loser by the event of the cause, (being a married woman who can acquire no property of her own,) there can be no doubt that in a moral light she was as much affected by it, as if she had been a feme sole. A tenant in possession is not an admissible witness to prove the estate of his landlord, for this would be to uphold his own possession.(i) Mrs. Claiborne’s testimony goes to support her own possession, use and convenience, derived from these goods intended peculiary for her benefit. — ■ See also 2 Term Rep. 265. (k)
*Upon the ground of public policy and convenience I am also of opinion that her testimony was properly rejected. Had a creditor levied an execution upon these goods in the possession of Claiborne, and in the daily use of his family, would a Court be justified in admitting his wife to prove that the goods were not his but belonged to a stranger? If such a practice were once admitted, an execution by fieri facias might always be evaded, and the process itself reduced to a mere nullity, by calling upon the wife of the defendant to prove, that though taken in his possession, and though used as his own for any period less than five years, they were in fact the property of a stranger. Collusive claims, for the purpose of protecting the property of debtors from execution might be so easily set up, that if such evidence as Mrs. Claiborne’s in this case be admitted to support them, no man could ever recover a debt, by levying an execution upon any species of personal goods. The case of Davis v. Din woody, (l) which I cite, not as a precedent, (for no decision in England since our independence commenced, has any authority in this Court,) but merely as an apposite case decided by able Judges upon the same law which as to this point prevails in this country — was one of that kind. An execution was levied on goods in possession of the husband, and upon an action against the sheriff by an executrix of the surviving *82 trustee of the wife, the husband was called upon to prove the identity of the goods contained in the schedule ; and held that he was imcompeten t. X am therefore of opinion that the judgment of the District Court ought to be affirmed.
JUDGE ROANE.
This is a supersedeas to a judgment of the District Court of Monon-galia, in an action of trover, brought by the appellee against the appellant. In that action, in which the writ was issued and served on the same day, viz. the 19th of April, 1800, the appellee declared for a great variety of goods and chattels which are particularly specified. On the plea of not guilty, a verdict was found for the plaintiff, for $1148 34 cents damages, A motion was made by the defendant for a new trial, but on the plaintiff’s releasing all the damages, except 9S0 dollars, the motion was overruled, and judgment rendered for the balance.
Several grounds were assigned by the appellant in support of the motion, as appears by the bill of exceptions: but my opinion will principally turn upon the question of the competency of Mrs. Claiborne as a witness, whose deposition is set out therein ; the other topics will, therefore, be *but slightly and incidentally touched. As that deposition goes to shew, that some of the goods in question were the property of the appellant Baring, and that her husband, Richard Claiborne, under whom the appellee claimed them, had no right thereto, it is evident that Baring may have been injured by the rejection of her testimony, if, in point of law, Mrs. Claiborne were a competent witness.
The bill of exceptions which was tendered by the appellant, states, that at the trial the appellee exhibited to the Jury a bill of sale of the 17th of December, 1799, from Claiborne to him, (the appellee,) which comprehends, perhaps, all the articles stated in the declaration, (with a few others,) with an endorsement made thereon that it was proved and ordered to be recorded in Monongalia Court, on the 14th of August, 1800; and that the appellee being ready to prove the execution thereof by the subscribing witnesses, the appellant agreed to admit the same as evidence in the cause. It is not stated by the appellant, that the bill of exception contains the whole evidence exhibited on the part of the appellee at the trial; that the appellee gave no evidence of the delivery to him of the goods by Claiborne, at that, or any posterior time; nor is any thing stated by the appellant which is inconsistent with such an idea. It may be, therefore, for any thing known to us with certainty, that the sale of the goods was consummated by a delivery thereof to the appellee by Claiborne, and that they were afterwards redelivered by him to Claiborne, to be holden by curtesy merely. Unless, therefore, we supply the defective statement of,the appellant, in this particular; unless we take it for granted that the appellee proved nothing but what his adversary was pleased to state he did prove; unless we take it as a general rule, that every thing proved at a trial is always inserted in the bill of exceptions; unless it be necessary for the party prevailing, and who takes no exception to the opinion of the Court, to shew in the bill of his adversary, .that the Court has done right, rather than for his adversary to shew therein that the Court has erred, the great question argued at the bar under our act of frauds, which presupposed a non-delivery of possession by Claiborne to the appellee, does not occur.
The bill of exceptions then goes on to state various testimony, proper for the consideration of the Jury, on the point of conversion by the appellant, at and before the time of the service of the writ in question. At present I shall only say, on this point, that this evidence, in connection with the evidence of title arising under the bill of sale to the appellee, ^imposed it on the appellant to exhibit opposing testimony. Such testimony, as to the conversion, has been exhibited by him, of witnesses who are not objected to : but the testimony of Mrs. Claiborne (the wife of Richard Claiborne) was also offered and rejected, whose evidence goes as well to the point of conversion, as of title to some of the goods, in favour of the appellant: and this brings us to the question of her competency asa witness.
With respect to the reading of her deposition, an objection has been taken, that it is not shewn to have been other than a de bene esse deposition ; and that if it were a de bene esse deposition, the measures preliminary to its introduction are not shewn to have duly taken place. I shall not stop to inquire from the terms of the caption of that deposition, or otherwise, whether it were agreed to be an absolute deposition or not: but this I say, as in the former case, that I will presume that the appellant shewed that which was necessary to its consideration by the Court, as his adversary has not shewn the contrary ; and I will also presume, till the contrary appears, . that the Judge who presided at the trial, did not enter into the merits of the testimony, until, by a compliance with the necessary prerequisites, the party offering it had entitled him to do so.
The testimony of Mrs. Claiborne, as spread upon the record, goes to shew that part of the articles in question were the property of the appellant; that they were placed in her hands as a loan, and not as a gift; that she never did consider them as the property of Mr. Claiborne; and that the appellee was apprised of the appellant’s claim of property therein, prior to the date of his bill of sale: it also goes to the question of conversion on the part of the appellant, as at and before the date of the writ; and, however the whole testimony in the cause may stand, with respect to such conversion, as at that time, (as to which £he Jury were the proper judges, and I think, have decided rightly,) Mrs. Claiborne herself, (as well as other testimony,) admits that the appellant had repossessed himself of his own goods ’at least, at and before the time of taking her deposition. In this reinvestiture of that property by the appellant, Mrs. Claiborne and her husband acquiesced, and it does not appear that, thereafter, any new contract was entered into in relation thereto, or that any new delivery thereof, by way of loan or otherwise, was made to Mrs. C. or her husband.
As preliminary to the discussion relative to Mrs. Claiborne’s competency, I will *83 take a bolder ground, and inquire ^whether her husband himself would not have been a competent witness : I say a bolder ground, because, while her interest is emphatically his interest, perhaps the doctrine of estoppels, in relation to the deed from Claiborne to the appellee, would apply less strongly to her than to him, if, indeed, it would apply to him at all, in the case before us. The maxim from the the civil law, so often quoted in cases of this sort, “ nemo allegans suam tnrpitudinem est audiendus,” certainly cannot apply to her, otherwise than by that fiction and inference of law, which (as to many purposes) considers husband and wife as one person.
There is no subject or doctrine of our law which is less technical, which is more a system of right reason, depending upon just inference and deduction by enlightened minds, from plain and self-evident principles, than the doctrine of evidence. The leading principles on this subject are few, and, abstractly taken, must be assented to by all: but great confusion has arisen in the reports upon this subject, by the infinite variety of aspects in which cases of evidence present themselves; and by the circumstances of those cases occurring, principally, in trials at nisi prius, and the consequent want of time and leisure in the Judges to test the cases, under all their circumstances, by fixed and self-evident principles. It will be seen in the case of Abrahams v. Bunn,(a) that from this mere circumstance, the Court of King’s Bench in England were obliged to decide as res nova, upon great consideration, a question which had a thousand times occurred at nisi xirius, but which had, from the above causes, never been correctly understood. When we add to this, that in modern times, cases on the very question before us have been often and solemnly decided by the Courts of Westminster-Hall in that country, upon argument and great deliberation, we must not only give the preference to the modern decisions on this subject, but also unavoidably approve the manly and independent declaration of Lord Mansfield, in the case of bowe v. Jolliffe,(b) who, in the name of the Court, said, “we do not sit here to take our rules of evidence from Keeble or Siderfin.”
As I am upon the subject of the modern decisions in England, I will beg leave to say, that while I consider myself bound to pare down the governmental part of the common law of England to the standard of our free republican constitution ; while I am free to admit, that from the progressive and mutable ^tate of the common law (even the law of meum et tuum) on some subjects, that law ought not to *be received here, whether evidenced by new or old decisions, in the same extent that it is admitted in England, the circumstances and character of which nation varying from ours,produces (imperceptibly perhaps) a correspondent variation in the rules of their common law ; (such, for example, as those which depend upon and vary with the highly commercial character of the nation ;) yet, that on such rules of the common law as do not change, such as are neither affected by a change in the form of government, nor by a variation in the circumstances or character of the nation, I am free to avail myself of the testimony of able Judges and Lawyers of that country, even of modern times. As upon those subjects of commercial law, or the law merchant, which are common to England and the other countries of Europe, the greatest Judges who ever sat in England have often consulted eminent jurists and merchants on the continent, in relation to such law ; as upon the subject of the law of nature and nations, we avail ourselves of the testimony of eminent writers on those subjects, though clothed with no authority whatsoever; so with respect to this last mentioned portion of the common law, which is and must ever be the same in both countries, until altered by the Legislature of either, I do not see that we may not avail ourselves of the testimony of the eminent and able judiciary of England, in relation to the subject. I shall certainly not be accused of partiality towards the government of Great-Britain; but I wish not, without necessity, to sound the tocsin against that nation?; to indulge my prejudices against her to an unreasonable length; nor to shutout from our eyes that light, which, while it conduces to truth, will certainly not contaminate our political institutions. I am not willing that an appeal to my pride, as a citizen of independent America, should prevail over the best convictions of my understanding. I do not see why, upon principles of stable and unvarying law, such as those of evidence, for example, the epoch of our independence should be clutched with so much avidity : nor that, in relation to such principles, the testimony of Lord Mansfield delivered in 1777, is not of equal weight with his testimony delivered in 177S. I wish it, however, to be clearly understood, that I would not only confine the reception of the modern decisions in England to doctrines of this description, but would not receive even them, as binding authority. I would receive them merely as affording evidence of the opinions of eminent Judges as to the doctrines in question, who have at least as great opportunities to form correct opinions as we have, and are influenced by no motives but such as are common to ourselves : *and with respect to ancient decisions in England, what Judge would wish to go further ? Who will contend that they are binding authorities upon us, in all cases whatsoever 7 Shall we not have the privilege every day exercised in England, of detecting the errors of former times ? Shall we “take our law of evidence from Keeble and Siderfin ?” Shall we go back to the Gothic days of Lord Coke, and reject every man as a witness who is not a Christian ? If we are to draw a line of exclusion on a subject no way affected by the change of our government, (I speak now in relation to the law of meum et tuum,) why shall we not rather keep our eye upon the particular topics in question, and vary our rule accordingly, than upon the time of our separation, which has no necessary connection at all with the subject ? It would be infinitely more mischievous for us to receive en masse all the doctrines of the common law as our law, and the ante-revolutionary reports *84 thereto relating', than to select what is really our law, and even to read the modern decisions upon the subject thereof. Exclusively of the circumstance of our having become a separate and independent nation, every argument which applies against the reception of the modern authorities in England arising from the annihilation of the right of appeal from our Courts to the Supreme Court in that country, equally applied, before the revolution, to the decisions of the subordinate Courts in Westminster-Hall, which were not paramount to our Courts, and whose decisions were yet received. Whensoever the judiciary of this country shall have had time to rear up a system for itself: whensoever that judiciary or the Legislature of our country, shall deem it proper to 'draw- a further line of exclusion upon this subject, I shall most readily yield my concurrence: but certain I am, that inasmuch as from the very outset of our independence up to this day, this Court, and perhaps every other Court in the union, has been in the habit of inspecting and acting upon the modern decisions in England, under the restriction I have mentioned ; and as those decisions have become the basis of their judgments, great inconvenience and mischief would result from making a sudden alteration in this particular; thereby shaking the authority of our own solemn decisions, and re-establishing the authority of such ancient decisions in England, as the modern ones, in both countries, had detected of error and exploded.
I have deemed it proper to make these preliminary observations, because an objection is taken to the modern decisions, by the Judge who has just spoken, i(t being impossible even to question the competency of the witness, on any *other ground; and because I shall in this cause, as usual, and as heretofore has been the course in this Court, quote and rely upon some post-revolutionary decisions in England, touching the subject before us : at the same time I do by no means admit, that the decisions of an earlier date would not equally support my opinion.
I come now to a particular examination of the question, whether Richard Claiborne, the husband, would not himself, have been a competent witness in this cause.
It is an established principle, that all persons are competent witnesses, who have either no interest in the cause, or whose interest therein hangs equal between the parties. On this latter principle our act of Wills has proceeded, which, in the event that a subscribing witness to a will has a greater legacy given him therein, than he would have been entitled to as his distributive share, only makes void that legacy, in so far as it exceeds that share. On this principle, that an interest on one side is counteracted by an equal interest on the other, it is held, that the acceptor of a bill of exchange is a competent witness in an action against the drawer, to prove that he had no effects, and thereby prevent the necessity of notice to him ; for though by supporting the action against the drawer, he relieves himself from an action at the suit of the holder, he at the same time gives an action against himself, at the suit of the drawer, in which the want of consideration will not avail him, but must be proved by another witness.(a) On this ground it was held, in the case of Ilderton v. Atkinson,(b) that if A. have received money from B. to pay C. and the question be whether A. were the agent of C. he (A.) may be called as a witness to prove the agency ; as in any event, he stood indifferent between the parties, being either liable to pay the money to the plaintiff, or refund it to the defendant.
In the case before us, R. Claiborne stood entirely indifferent between the parties. By-giving testimony, and procuring a judgment for Baring in this action, he subjected himself to the action of Reeder, founded on the warranty in his bill of sale : by procuring a verdict and judgment for Reeder, he laid himself liable to Baring’s action, to recover the value of his goods sold to Reeder.
But however Claiborne might be interested in the question contested between the parties in this suit, he is a competent witness, if he is not interested in the event of this-cause ; or if, being interested on one side, he is equally interested on the other. This position is entirely sustained by many modern cases, and particularly by the case of Bent v. Baker, (c) *and the rule now seems to be, that the witness is competent, if the proceedings in the cause cannot be used as evidence for him, although he may entertain wishes on the subject, and even have occasion to contest the same question, in his own case, in a future action ; and Judge Buller says, he ‘1 takes the true line to be, is the witness to gain or lose by the-event of the cause ? which cannot be, because the verdict in the cause in question could not be evidence either for or against him in another action.” Under this principle it was held, in that case, that a broker who himself underwrote a policy, after having got it underwritten by another, is a competent witness in an action against that other, to prove circumstances tending to shew that the underwriters on the policy were not liable to pay the loss ; or, in other words, to vacate the policy as to that defendant: he was admitted to be examined, although clearly interested in the question contested, because he was not interested in the cause, nor could the verdict and judgment rendered therein, be given in evidence for or against him, in an action thereafter to be brought against him, on the same policy, and involving the same question. As to the old notion adopted by Lord Holt, in King v. "Whiting, (1) that the verdict in the first action would be sure to be heard of by the Jury in the second, arid influence their verdict, it has been long and often exploded.(d) I apprehend that the principle of the above position is entirely borne out by the ante-revolutionary case of Abrahams v. Bunn.(e) supported and explained in the case of Smith v. Prager just mentioned; in both which cases, and especially the latter, it was held, that in an action *85 for usury, the party borrowing- was a competent witness to prove the whole case.
It is an invariable rule of evidence, that as no man is permitted to give evidence in his •own cause, neither shall he avail himself in a future action of a verdict founded on his own •evidence. It is also a rule, that no man can be prejudiced by a verdict, who could not have been benefited by it, had it gone contrary, (a) These rules, to say nothing of the necessity of the verdict’s being between the same parties, go incontestibly to shew, that the verdict in the cause in question could never be used for or against R. Claiborne, in •a future action.
But it is urged that this witness is estopped by his own deed, and cannot invalidate it. To this I will first answer, that if Claiborne hadn been offered and received as a witness, it does" not necessarily follow, that he would have impeached his own deed. His testimony mig'ht have gone, for any *thing appearing in the bill of exceptions to the contrary, to prove, on behalf of Reeder, that a delivery of possession accompanied by his deed to Reeder ; and, on behalf of Baring, that he derived a title under Reeder to the goods in question, posterior to, and independent of 'any question relative to the validity of the bill of sale. In either point of view, the parties respectively would have been entitled to call him as a witness, and it might not be necessary, for any thing appearing in the bill of exceptions, for him to question or invalidate his own deed. But I will not put this question on this ground. I will meet the objection in its full force.
If Claiborne should even impeach his own •deed in his own cause, it does not necessarily follow, that he would allege his own turpitude. Fraud, distress, duress, and various other circumstances, might have wrested it from him, might entirely have disrobed the transaction of all turpitude; and it may be, that the deed ought not to be a moment countenanced in a Court of Justice. But as no man commits iniquity, or accuses himself of dis-honourable conduct, without a motive, if he were to impeach the deed, merely in behalf •of others, and to prevent injury and injustice to them, without a possibility of gain to himself, the disinterestedness of his motive would yield an apology for the prima facie turpitude of his conduct. But on this occasion, we are not driven to general reasoning : abundant authorities occur to repel the objection.
In Jordaine v. Bashbrook, (b) we are told by Bord Kenyon, “that estoppels are odious, and ought not to be extended further than the law has already carried them.” At this time the law had already admitted the subscribing witnesses to a will to give evidence to impeach it; (Bowe v. Joliffe;) at this time, in the case already mentioned of Bent v. Baker, an underwriter had been permitted to impeach a policy subscribed and effected by himself ; and, in the principal case, (Jor-daine v. Bashbrook,) the payee and indorsee of a bill of exchange was admitted to prove that the bill was void in its creation. It was not without some struggle that this last decision was acceded to, in respect of the negotiability of the instrument. The rule, as generally understood before, arising out of the liberality of the modern decisions, had principally confined the doctrine of estoppels to negotiable instruments ; but yet the decision in Jordaine v. Bashbrook, under all the aspects of the case, was carried : — But if this doctrine, as to deeds generally, had long before been relaxed ; if that doctrine has also been relaxed in relation to the highly commercial instruments, policies of insurance, and the highly commercial *and negotiable instruments, bills of exchange, in the cases just mentioned, can we hesitate a moment to relax it in relation to the bill of sale in question ?
R. Claiborne then had clearly no interest in the cause in question, as relative to the property in the goods, which would disqualify him from being received as a witness. Had he any interest in that cause arising from his right to use or possess them, which would work this effect ?
An interest (1) whichdisqualifi.es a witness from being received in a Court of Justice is, “where there is a certain benefit or disadvantage to the witness attending the consequence of the cause one way.”(c) A mere hope of benefit will not disqualify. Thus a woman whose husband was under sentence of death is a competent witness against others indicted for the same offence, though she confessed she had hopes that their convictions would obtain her husband’s pardon. But if a man promise the witness, that if he recover the lands in question, he shall have a lease of them for so many years, this shall disqualify the witness, for he would have a fixed and certain advantage, by the event of the suit, and by his attestation derives a benefit to himself, (d)
The interest too must be of some consideration or dignity in the law : for it is held that a tenant at will of lands may prove livery of seisin in the lessor ; for a man cannot be said to gain or lose where he has only a precarious interest, and not such a certain benefit or charge out of the estate as he may recover in an action, (e) I see no difference between this case and a mere possession of personal goods, on loan, which the owner may, at any time, put an end to, by recaption, if he can do it without force, or by suit where the possession is withheld from him without right.
But, in the case before us, there is abundant testimony, (even of Mrs. Claiborne herself,) to shew that Baring had repossessed himself of the goods, and no evidence that he had made any new loan thereof of them to her or her husband. At any rate, however, it is unequivocally proved, that Bar *86 ing locked them up in the Smoke-house, and kept the key in his pocket: and in 1 Bac. 368,(a) it is held, that if A. leaves a chest locked with B. and takes away the key, the goods are in the possession of A. for they are locked out of the possession of B. and that if B. pawns them to a broker, A. may recover them without tendering the money.
Whatever hopes or expectations, therefore, Mr. Claiborne or his wife may have had of favour from Mr. Baring in the event of his retaining the goods claimed by the appellee ; whatever bias they may have had towards him from that or*any other circumstance, I cannot see that he (or his wife) had such certain interest in the subject in question, as would disqualify them from giving testimony : at the same time it is admitted, that these circumstances might properly be addressed to the Jury in estimating his credibility. If we once go beyond the line established as above, in relation to the reception of testimony ; if we once go into the field of bias, of wishes, of hopes, or expectations of benefit, we have then lost sight of all our land-marks ; we are at sea without compass to steer by, or rudder to guide our course ; — the relations and con-nexions of parties litigant are to be excluded forever; and the whole fabric of the law on the point in question will be entirely demolished.
I have thus considered this case as if the question related to Mr. Claiborne the husband. This view is, in many points, much stronger than the case actually before us; and every thing I have said in favour of his competency emphatically applies in favour of that of his wife. If a man may, in behalf of a stranger, give testimony in a cause which involves a question concerning which he may in future be himself deeply interested in another cause, in which he is to be a party, and in which other testimony must be resorted to, to benefit him, this holds, a fortiori, (or at least with equal strength,) in relation to his wife. On this ground I entirely approve of the decision in Williams v. Johnson(b) which was quoted in the argument. That case is also recognized as law, in many books and cases of high authority. In that case, the testimony of the wife went not (either directly or circuitously) to fix any burthen on her husband, for neither her testimony, nor the verdict founded thereon could ever have been given in evidence against him : it merely went to exempt a stranger, to whom she was entirely indifferent, from being charged with a debt which was due to the plaintiff by another. And I take the rule on this subject to be, that in civil actions where the husband is no party, the wife may be called as a witness, even to facts, which, if proved in another action to which her husband is a party, and by evidence other than her own, may go to charge him. The unavailing testimony of the wife in such case, entirely impotent as it relates to the husband, producing to him no loss, and consequently exciting in him no displeasure, will not violate the reason of that policy, which, in respect to the harmony to be desired in the marriage state, has given rise to the rule in question.__
In every point of view, therefore, I am of opinion that Mrs. Claiborne was a competent witness, and that a new trial ought to be granted.
*JUDGE FILMING.
The counsel for the appellant, in this cause in the Court below, have stated five different grounds on which they moved the Court below for a new trial. 1st. Because the verdict was against evidence. 2d. Because the damages were excessive. 3d. Because the evidence of Mrs. Ann Claiborne ought to have been admitted. 4th. Because the defendant, on the said trial was surprised by the rejection of the said evidence. 5th. Because since the trial they have discovered new evidence. As some of them appear frivolous and unfounded ; and the force of others seems weakened by the offer of the plaintiff to release 198 dollars of the damages, I shall confine my observations to the rejection of Mrs. Claiborne’s testimony, which to me, seems to be an important point, and is attended with difficulty ; in the discussion of which it may not be improper to inquire what are the legal disabilities of a feme covert (as such) to give evidence in a civil cause ?i There are only two which occur to me at present; the first is where the husband is a party, either plaintiff or defendant in a cause ; the other where the husband is immediately interested i'n the event of a suit.
It is a general principle that no one can be a witness for himself ; and it follows of course, that the husband and wife, whose interest, the law has united, are incompetent to give evidence in behalf of each other, or any other person whose interests are the same; and the law, for reasons of policy, also prevents them from giving evidence against each other; for it would be hard that the wife, who could not be a witness for her husband should be a witness against him ; but it has been adjudged that in civil causes, where neither is a party, the wife may be called as a witness to prove facts which may eventually, charge the husband ; as in the case of Williams v. Johnson, (in 1 Strange, 504,) which case has never been overruled that I can discover. The case of Barker v. Dixie, in the time of Lord Hardwicke, and cited by Mr. Nicholas to prove a contrary doctrine, doth not apply ; for there the husband was a party to the suit.
I shall next consider, on general principles, what is such an interest in the event of a suit as will totally exclude the testimony of a witness. And this has often been the subject of controversy. Lord Mansfield, when delivering his opinion in the case of Walton and others, assignees of Sutton v. Shelley, (c) observed, that the old cases, upon the competency of witnesses, have *gone upon very subtle grounds ; but, of late years, the Courts have endeavoured, as far as possible, consistently with those authorities, to let the objection go to the credit, rather than to the competency of a witness. And Lord Kenyon, when giving his opinion in the case of Bent v. Baker,(d) premised, with mentioning what was said by Lord Mansfield on the subject, and added, “if the opinion of so great a Judge stood in need of any support, it *87 would have it from the sentiments of Lord Hardwicke, in the case of King v. Bray, who said, that whenever a question of this sort arose, on which a doubt might be raised, he was always inclined to restrain it to the credit rather than to the competency of the witness, making such observations to the Jury as the nature of the case should require.” Bord Kenyon further said, that, fortified with such authorities as these, he had no scruple in declaring his concurrence that, wherever there are not any positive rules of law against it, it is better to receive the evidence of the witness, making nevertheless such observations on the credit of the party as his situation requires. And Peake, in his treatise on evidence page 144, adds, that the “general rule now established is that no objection can be made to a witness, on this ground, unless he be directly interested, that is, unless he may be imme-ately benefited or injured by the event of the suit; or unless the verdict, to be obtained by his evidence, or given against it, will be evidence for or against him in another action in which he may afterwards be a party. Any smaller degree of interest, as the possibility that he may be liable to an action - in a certain event, or that, standing in a simular situation with the party, by whom he is called, the decision in that case may, by possibility, influence the minds of the Jury in his own, or the like, though it furnishes a strong argument against his credibility does not destroy his competency.”
Bet us apply these rules to the case now before us. It has been admitted that, should Mrs. Claiborne’s evidence be admitted, it discloses facts that may eventually charge her husband. Admitting it to be so, we have the authority of the case of Williams v. Johnson, directly in point, in support of the admission of her testimony. But the great objection made in the argument of the cause was the supposed interest she herself had in the event of it; from an expectation that, in case Baring should be successful, she would be favoured with a reloan of the *goods. This seems to be a remote interest indeed, and only conjectural ; but, however that may be, and whatever may be the ground of such expectation, it cannot be affected by the event of the suit : for it is well known, that in an action of trover, the moment the plaintiff recovers his damages, for the conversion of the goods, the absolute property in them vests in the defendant, and a recovery of damages by Reeder can be no bar to Baring’s exercising his benevolence to Mrs. Claiborne, should he be so inclined.
As to the opinion that the admission of Mrs. Claiborne’s testimony would be opening a door to fraud, and to perjury ; and the apprehension that it might be considered a.s a precedent to sanction the interference of a wife, where a fieri facias is levied on the goods of the husband, I confess I have no such fears, as the cases appear to me to be very distinct from each other.
I am of opinion, upon the whole, that Mrs. Claiborne is a competent witness, and that the credibility of her testimony ought to be left to the consideration of a Jury ; that the judgment be reversed, the cause remanded to the Court below, for a new trial to be had therein, with an instruction agreeable to this opinion.
JUDGE! CARRINGTON.
As I concur in opinion with the two Judges who have immediately preceded me, I shall be the more concise in assigning the reasons which have induced me to form that opinion.
The objection to Mrs. Claiborne’s testimony is, that she was interested in the event of the cause, inasmuch as she would be deprived of the use of those goods, in case of a recovery by Reeder. The witness was in possession, and had the use of those things, at the will of Baring. If this had been an action of detinue, the specific articles might have been recovered, and Baring himself would have had no power over them; consequently Mrs. Claiborne would have been deprived of the use. But this is an action of trover to recover the value of the goods, which will neither disturb the possession of Baring nor the use to Mrs. Claiborne; and if Baring chose to continue them in that use, he had the same power over the goods, immediately on the commencement of this suit, as before.
The cases cited by counsel on both sides, I have carefully examined, and the weight of authorities will warrant the admission of Mrs. Claiborne’s tesiimony. The case in 1 Stra. 504, goes even to permit the wife to be a witness *to charge the husband, further than the husband, in this case, could be charged by the wife’s testimony. The cases in Term Reports do not contradict that in Strange. As to the precedent, it can have no operation, but in similar cases : — every case should be decided according to its own circumstances. In the present case, Mrs. Claiborne had a. bare prospect, a mere hope, that the goods might be returned to her : and that prospect was not destroyed or affected by this suit. An heir apparent, and even a son, never has been considered as an incompetent witness for the father, although he might be expectant of a large fortune at a future day. 7 Term Rep. 480, Ilderton v. Atkinson, is a case in point. There, a man in the character of an agent received a sum of money from the defendant to the use of the plaintiff : upon a suit against the debtor for the same sum, the plaintiff denied the agency, and objected to the competency of the agent to prove his own powers. The Court considered him liable no more to the one than the other, and admitted him as a competent witness. This may be considered as overruling the case of Davis v. Dinwoody.
I concur in opinion that Mrs. Claiborne was a competent witness ; that the judgment should be reversed and a new trial awarded, with directions to the District Court to admit the testimony of Mrs. Claiborne, whose credibility will rest with the Jury.
JUDGE! UYONS.
I cannot conceive any thing more dangerous to creditors and purchasers than to admit a wife as a witness to prove that the personal estate held by her husband, upon the possession of which he obtained credit, did not belong to him, but was lent to her by a friend; which would put an end to all credit on the mere possession of personal property, and open a broad door to fraud, deceit and perjury.
Possession alone is prima facie evidence of *88 ownership, and obtains credit to the possessor every where. That is the only criterion by which the people generally can judge of his property ; and what will be the situation of merchants, tradesmen and purchasers, if they are liable to be defeated and defrauded of their just debts and purchases by the evidence of the wife that the property did not belong to the husband, but was only lent to him or her? Would it not encourage fraudulent combinations to obtain false credit ? Let the husband only make a friend of a third person to claim the property as lent, and the wife is ready to prove *it, without any other proof as to prior right or even possession in the lender, or that he had ever owned, or even seen the articles that were said to have been lent.
There is no proof in this case that the articles claimed by Baring as lent by him were ever so lent, or were ever possessed by him, except the deposition of Mrs. Claiborne referring to Baring’s letter mentioning the loan ; and, surely, such a letter may be easily framed by any person combining in a fraud to answer the purpose of protecting the property from creditors or purchasers : not that I would impute any fraud to Mr. Baring in this case, but I must guard against its being practised by others, and not establish a precedent that may in any way encourage or countenance such fraudulent practices to the manifest injury of fair creditors and purchasers by holding out a false credit to the world to deceive and impose on mankind, (a)
Courts have a right to determine on the competency of witnesses, and to disallow such as are incompetent, if their evidence is objected to by either party.
Husband and wife are considered as but one person in law. She is under his con-troul, and subject even to his correction ; “which, although, doubted, as Mr. Blackstone says, in the polite reign of Charles II. yet the lower rank of people, who were always fond of the old common law, still claim and exert their ancient privilege, and the Courts of Haw will still permit a husband to restrain a wife of her liberty, in case of any gross misbehaviour for which he cites Strange, 478,(b) and 875,(c) — 1 Bl. Com. p. 445.
Witnesses may be examined upon their voir dire, or their interest may be proved in Court, and such as are interested in the event of the cause are not to be received or examined. 1 Bl. 370.
Ought a wife to be received in a cause to prove a fraud on her husband ? Lord Coke says she is not to be examined against her husband, (Co. Litt. 6,) and even in a matter where she was only concerned as executrix, she was disallowed.(d) She cannot be a witness for a person jointly indicted with her husband,(e) and, if not, surely not in one against her husband alone. The reason of all these cases is founded on the impolicy of permitting husband and wife to give evidence for or against each other. * Again. No person is allowed to invalidate his own act(f) — 1 Durnford and East, 330, nor to prove his own turpitude, (g) Surely, therefore, Claiborne ought not to be allowed to invalidate his own deed, or. prove his own turpitude; neither ought his wife to prove it on, or for him.
In the case of the King v. The inhabitants of Eriswell, reported in the appendix, No. 1, to Peake’s Law of Evidence, and in 3 .Term Rep. 707, the Judges were divided upon a question of evidence, Grose and Kenyon being on one side, and Buller and Ashurst on the other. Lord Kenyon then said that “all questions upon the rules of evidence are of vast importance to all orders and degrees of men ; our lives, liberty and property are all concerned in the support of these rules founded upon good sense,” &c. In the course of his observations, he mentioned “that, in the King v. Nuttley,(h) the whole of the wife’s evidence was disregarded; that, in Baldwin v. Blackmore,(i) Justice Poster had treated the argument with indignation that cummunis error facit jus ; had allowed that it might sometimes be true, but ‘hoped he should never hear that rule insisted on to set up a misconception of the law in destruction of law.’ The mistakes of Judges, said Lord Kenyon, provided they became universal, would, according to that doctrine, become rules of law, and, working injustice every day, if persisted in, would supersede the law.”
There can be no general rule, it is said, without an exception ; but exception upon exception, refinement upon refinement bring the rule to nothing ; so that it would be better if no rule existed, and then discretion alone would govern. .
There is nothing, concerning which the Judges of England differ more, than rules of evidence ; they have been so often vexed and perplexed, as Chief Justice Ryder said, if cases cited were overruled by subsequent Judges; and certainly we have the same right to overrule their determinations.
Lord Mansfield and Lord Hardwicke were generally inclined to let objections go to the credit rather than competency of witnesses, exercising a right of making observations to the Jury concerning their testimony as the nature of the case should require, a right and a practice which the Courts are not allowed in this country to indulge, as encroaching too much on the province of the Jury. *Yet Lord Hardwicke in the case of Barker v. Sir Woolston Dixie, (k) would not allow the plaintiff’s wife to be examined, notwithstanding the defendant was willing, and Lord Mansfield decided in the same way, in the case of Bentley v. Cook, cited in 2 Term Rep. 265.
Lord Kenyon, in a late case of Jordaine v. Lashbrook,(l) after recommending consistency in rules of evidence, and talking much about its vast importance, everruled the decision in Walton v. Shelly, reported in 1 Term Rep. 296, declaring that case not to be *89 law, and allowed the payer and indorser oí a bill of exchange to prove that the bill was void in its creation ! For my part, I conceive that the case of Walton v. Shelly was the best law, and ought to prevail against the latter opinion, which opens a door for fraud and perjury.
Factors and agents are allowed to be witnesses, as servants not interested ; but if any way liable to the principal or employer, he must release them from all actions before they can be admitted. If, therefore, Claiborne and his wife were considered as agents or trustees in this case, Baring should have relea-sed Claiborne, and she should have been sworn on a voir dire before she was allowed to be a witness ; and, even then, much might have been objected to her credibility, as she was to have the use of the furniture, &c. ■during her own pleasure, according to Baring’s letter. But, certainly, until Claiborne was fully released, I do not think she was competent.
As to Reeder’s suffering Claiborne to keep possession of the goods, after Claiborne had made a deed for them, or the deed’s not being recorded within eight lunar months, I do not consider either question material in this case, as Baring was not either a creditor ■or purchaser, but claims as amere lender, and, without the aid of Mrs. Claiborne’s evidence cannot prove even that; for, if he had had any other evidence, he would and ought to have proved it, in delicacy to Mrs. Claiborne, who was not only wife of Claiborne, but sister of his own wife ; so that he has no right to make the objection, having not recorded his loan or given any notice of it, to prevent a sale of the goods lent, or credit being improperly obtained by the person who had them in possession.
It has been said that Claiborne is not interested, because he is liable to both parties ; but how can Claiborne be liable to Baring, except by the evidence of his wife, who is the only witness to prove the loan, or his knowledge of *its being a loan only, and not an absolute gift to her ? Surely, then, he could only be liable to Reeder, and is, therefore, an improper witness against his own deed, which affirmed the goods to be his, and warranted them to Reeder.
So that, upon every view of the case, as to impolicy or fraud, I think the opinion of the District Court was correct, in disallowing the wife to be a witness.
I will further observe, 1. That the verdict was not against evidence ; 2. That the damages were released to the satisfaction of the Judge, who could best determine that matter ; 3. That there could be no surprise, as to the rejection o£ Mrs. Claiborne’s evidence, because the objection was reserved when her deposition was taken ; and, 4. That the new matter was no cause for a new trial, as Claiborne’s affidavit was no proof ; and Fairfax might have been produced at the trial: and the damages released amounted to more than the articles left by Baring, according to the opinion of the Judge who tried the cause. I am, therefore, for affirming the judgment.
But, a majority of the Judges being of a different opinion, the judgment is to be reversed and a new trial awarded, with directions to admit the deposition of Mrs. Claiborne to be read as evidence at the trial of the cause.

 Peake’s L. Ev. 102, 2 Call, 231; Mead v. Tate, 1 Stra. 35; Lockart v. Graham, 1 Term Rep. 164; Carter v. Pearce, adm’r. See also Peake’s L. Ev. 93.

 Peake’s L. Ev. 133.

 Peake’s L. Ev. 93, to 95.

 1 Stra. 504, williams v. Johnson.

 P. L. Ev. 128.

 2 Bac. Abr. Gwil. Ed. 578; 1 Bl. Com. 422; 8 Wooddeson, 288.

 1 Stra. 504.

 4 Term Rep. 678.

 Barker v. Dixie.

 2 Term Rep. 265.

 1 .Lilac..Rep, 365.

 1 Stra. 35.

01) See Peake's L. Ev. note (q) 123, 126; Supp. to Vin. 4, 203.

 2 Term Rep. 205.

I) See Cliristan’snote to 1 TL Black. 443.

 4 Term Rep. 678.

 2Bac. Abr. Gwil. edit. 581, tit. "Evidence,’' let. 3.)

 Cowp. 631, Doe, ex dem. Poster v. williams.

 The King v. Cliviger.

 4 Term Rep. 678.

 1 Burr. 2251.

 1 Wm. Black. Rep. 306.

Ca) Peake’s L. Ev. 154, (2d ed.)

 4 Term Rep. 480.

 3 Term Rep. 27.

l) 1 Salk. 283. — See notes to this case, in the 6th edition of Salkeld by Evans. — Note in Original Edition.

 See 7 Term Rep. 63, Smith v. Prager.

 4 Burr. 2251.

 Gilb. U. Rv. 38, 7th ed.

 7 Term Rep. 601.

 See 1 Espinasse’s Rep. (Day’s ed.) 488, note (1) to Smith Cl. t. y. Prager. — Ib. 97. 98, note (1) (2) to The King v. Eden. — Ib. 177, note (1) to Rich, et al. v. Topping, in which all the authorities, both British and American, on the doctrine of the competency of witnesses, arc very judiciously collected by the editor. — See also Pederson v. Stoffles, (1 Campb. 144,) where it is held that a witness considering himself under an honorary obligation which will be affected by the event of the cause, is nevertheless competent; and the Chief Justice (Sir Jambs Mansjb'ibx,d, of C. P.) is represented to have said, “that the same honour by which the witness considered himself bound to pay a sum of money, for which he was not liable, would lead him to speak the truth between the parties.” — Note in Original Edition.

 Gilb. L. Ev. 106, 7th edit.

 Gilb. L. Ev. 108, 7th edit.

j Ibid.

 Gwillim’s edit.

 1 Stra. 50i.

 1 Term Rep. 300.

a) 3 Term Rep. 37.

 walton v. Shelly, cited in Peake’s L. Ev. 180, 2d. edit.

 Rex v. Lister.

c) Child et al. v. Hardyman.

 2 Ch. Cases, 39, Anonymous, Stra. 1094; Hill v. Hill.

 Stra. 1095, Rex. v. Tracy, Ibid 633, Rex V. Azire.

 1 Term Rep. 330, Nutt v. Bourdieu.

 Cowp. 199, Holt v. Tyrell, cited in argument.

 Burr. Set. Cases, 701.

 1 Burr. 595.

 Cases temp. Hardw. 264.

 7 Term Rep. 601.